UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAMPATH KRISHNAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-679 (RMC) |
| ANTHONY FOXX, Secretary of the U.S. Department of Transportation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**OPINION**

Sampath Krishnan is a telecommunications specialist/program manager at the Federal Aviation Administration (FAA), an agency of the U.S. Department of Transportation (DOT). Mr. Krishnan is a seventy-two year-old Asian, East Indian and Hindu male who has worked at DOT for 28 years. His current job title is FV-J Telecommunications Specialist/ Program Manager. In 2011, Mr. Krishnan applied for two posted supervisory specialist positions, but the FAA filled a single position and selected another candidate, David Meusel, who is a "white, younger, Caucasian, Christian, non-Asian Indian." Am. Compl. [Dkt. 4] ¶ 23. As a result, Mr. Krishnan, proceeding *pro se*, brought this action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), 42 U.S.C. § 621 *et seq.*, against Anthony Foxx in his official capacity as the Secretary of DOT.

Specifically, Mr. Krishnan asserts claims of race discrimination (Count I), age discrimination (Count II), retaliation (Count III), "Preferential Treatment Resulting in Discrimination" (Count IV), "Ongoing Pattern of Discrimination" (Count V), religious

1

discrimination (Count VI), national origin discrimination (Count VII), ethnic background discrimination (Count VIII), and gender discrimination (Count IX). *See* Am. Compl. ¶¶ 103-48. DOT has filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment on all claims. Mot. for Summ. J. [Dkt. 6] (MSJ). Mr. Krishnan filed a timely opposition, to which DOT replied. For the reasons that follow, the Court will grant DOT's Motion to Dismiss as to some claims and Motion for Summary Judgment as to others.

## I. FACTS

Mr. Krishnan's discrimination and retaliation claims arise from his non-selection in 2011 for two posted supervisory specialist positions.[1] The FAA interviewed three people, including Mr. Krishnan, but ultimately selected Mr. Meusel to fill a single vacancy. Am. Compl. ¶ 30. Mr. Krishnan was ranked second and "scored significantly lower on [the] selection procedure" than did Mr. Meusel. Am. Compl. ¶¶ 30, 47-48.[2] According to the selecting official, Jeffrey McCoy, "Mr. Krishnan was not selected because another candidate was found to be more qualified." MSJ, Ex. 1 [Dkt. 6-1] (McCoy Aff.) ¶ 38. Mr. Krishnan did not have "any direct managerial or leadership experience in managing a large workforce responsible for managing mission critical telecommunications networks." *Id.* Mr. Meusel, however, had worked as Acting Manager of the Network Operations team in 2010 for a period of six months. *Id.* ¶ 45.

Mr. McCoy concluded that Mr. Krishnan could have been successful in the supervisory specialist position, but that it would have required a considerable amount of time,

---

[1] Only one vacancy existed, but it could have been filled in either Washington, D.C. or Melbourne, Florida. Two announcements were posted, with one for each locale.

[2] Mr. Krishnan attempts to deny these facts, *see* Opp'n [Dkt. 8], SOF ¶ 6, but they come directly from the Amended Complaint.

training, and close supervision as he learned the ropes. *Id.* ¶ 38. Mr. Meusel did not present the same concerns due to his prior experience as Acting Manager and his detailed responses to questions during his interview. *Id.* ¶ 45.³ Mr. Meusel was found to be more qualified than Mr. Krishnan.

Mr. Krishnan also asserts that since 1991, he has been discriminated against and consistently turned down for promotions. *See, e,g.*, Am. Compl. ¶ 16 ("Krishnan was interviewed for close to two dozen positions, but learn[ed] that these positions went to younger non-Asian Indians, non-Hindu, non-brown and mostly to white, Caucasian Christians."); ¶ 39 ("Since 2002, Krishnan has applied for numerous promotional positions with the USDOT/FAA"); ¶ 42 (alleging a reassignment request made around 2003); ¶ 63 (alleging that DOT "[b]locked Krishnan's promotions to more than 30 positions"); ¶ 93 ("[A]t least since 2003, employment history for DOT/ FAA . . . show[s] that it gives its employees who are white, Caucasian, Christian and younger disproportionately more leadership roles, higher performance appraisals, more frequent and larger bonuses, awards and pay increases, and more frequent and faster promotions."). Mr. Krishnan included his own affidavit in support of his opposition, but it contains equally imprecise allegations concerning events prior to 2011. *See generally* Opp'n, Ex. 1 (Krishnan Aff.).

---

³ Mr. Krishnan does not dispute these facts but argues, without detail, that "[t]he selecting official's actions" and "[t]he management actions are material issues in dispute in this case." Opp'n, SOF ¶ 6.

## II. LEGAL STANDARD

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.*, but a court need not accept as true legal conclusions set forth in a complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). If, in considering a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the snonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

Sampath Krishnan has had a long career at FAA and has never been promoted above a GS-13, despite his many applications for such positions. At some points in the past, he filed discrimination complaints against FAA, in which the most recent event was a 2009 settlement. In the instant case, he complains of years of discriminatory treatment. Most particularly, he complains that he was not promoted in 2011 and that a younger, white, non-Hindu male got the job instead.

### A. Pre-2011 Non-Selections

Defendant moves to dismiss all claims based on pre-2011 events because the Amended Complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court agrees. Mr. Krishnan concedes that he failed to exhaust his administrative remedies as to these matters. It is well established that a plaintiff must comply with its administrative exhaustion requirements as a precondition to his suit. *See Nat'l R.R. Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). "The exhaustion requirement is not a mere legal pleasantry — rather, it is a natural outgrowth of fidelity to the principle of separation of powers, and it constitutes an indispensable prerequisite to a lawsuit in federal court." *Silver v. Leavitt*, No. CIV.A. 05-0968 JDB, 2006 WL 626928, at *9 (D.D.C. Mar. 13, 2006) (citation omitted).

While he argues that his numerous unsuccessful applications for promotion constitute a continuing violation of his rights to equal employment opportunity (EEO), each was a discrete event that required a timely EEO complaint. *See Morgan*, 536 U.S. 101 at 113; *Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998). These old matters cannot be remedied now. Since Mr. Krishnan failed to satisfy the exhaustion requirement on these claims, he "will be denied a judicial audience." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) ("Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary.").

### B. Discrimination Claims based on 2011 Non-Selection

Defendant moves for summary judgment on Mr. Krishnan's discrimination claims under Title VII and ADEA based on the 2011 non-selection, that is, Counts I, II, and IV-IX of

6

the Amended Complaint.[4]  "Under Title VII [and] the ADEA . . ., the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, [or] age . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citations omitted).  Defendant contends that Mr. Krishnan failed to satisfy the second element of his discrimination claims.

A plaintiff can adduce either direct or circumstantial evidence of discriminatory intent.  In the absence of direct evidence, a plaintiff "must resort to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (citations omitted); *see also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the *McDonnell Douglas* framework applies to ADEA claims).  Under *McDonnell Douglas*, the plaintiff must first make out a *prima facie* case (1) that he is a member of a protected class; (2) that he suffered an adverse

---

[4] The Court will strike Count IV of the Amended Complaint, "Preferential Treatment Resulting in Discrimination," *see* Am. Compl. ¶¶ 126-29, because it is redundant and duplicates Mr. Krishnan's other claims.  *See* Fed. R. Civ. P. 12(f) ("The Court may strike from a pleading . . . any redundant . . . matter.").  With respect to Count V, "Ongoing Pattern of Discrimination," *see* Am. Compl. ¶¶ 130-32, Defendant correctly claims that it should be dismissed because "it is not a separate and free-standing cause of action . . ., but is really merely another method by which disparate treatment can be shown," *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013).  *See* MSJ at 9 n.3.  Mr. Krishnan did not respond to this argument in his Opposition and, therefore, conceded it.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff filed an opposition to a dispositive motion and addresses only certain arguments raised by a defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  To the extent that Mr. Krishnan intended to assert a hostile work environment claim, he has alleged no facts to show "a pervasive policy of intentional discrimination." *City of New York*, 717 F.3d at 84; *see also Houston v. SecTek*, 680 F.Supp. 2d 215, 225 (D.D.C. 2010) ("Allegations of undesirable job assignments or modified job functions and of . . . unprofessional and offensive treatment are not sufficient to establish that [Plaintiff's] work environment was permeated with discriminatory intimidation, ridicule, and insult.") (citation and quotations omitted), *aff'd*, 407 Fed. App'x. 490 (D.C. Cir. 2011).

7

employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Youssef v. F.B.I.*, 687 F.3d 397, 401-02 (D.C. Cir. 2012). The burden then shifts to the defendant, which must articulate some legitimate, nondiscriminatory reason for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288-89 (D.C. Cir. 1998) (en banc) (stating that the employer's burden is one of production, not persuasion). At that point, the employee must "produce[] evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [the employee] based on his [protected category]." *Brady*, 520 F.3d at 495

In the instant case, Mr. Krishnan does not, and cannot, show that Mr. Meusel's selection supports a claim of gender discrimination because Mr. Meusel and Mr. Krishan share the same gender. Accordingly, Mr. Krishnan has failed to establish a *prima facie* case of gender discrimination with regard to his 2011 non-selection and the claim will be dismissed. *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (dismissing discrimination claims because plaintiff failed to allege that the "two supervisory positions" that he applied for "went to someone outside of [his] protected class").

With respect to the other discrimination claims,[5] Defendant has articulated a legitimate nondiscriminatory reason for Mr. Krishnan's non-selection: "another candidate was found to be more qualified." McCoy Aff. ¶ 38. Defendant has produced evidence to this effect

---

[5] The analysis below applies to the remaining protected classes on which Mr. Krishnan relies for his discrimination claims under Title VII and ADEA, *i.e.*, race, age, religion, national origin, and ethnic background.

8

and the Amended Complaint recognizes that Mr. Krishnan "scored significantly lower on [the] selection procedure" than did Mr. Meusel. Am. Compl. ¶¶ 47-48.

Mr. Krishnan does not contest Defendant's proffered facts, specifically that: (1) Mr. Krishnan lacked "direct managerial or leadership experience in managing a large workforce responsible for managing mission critical telecommunications networks;" (2) Mr. Krishnan's written responses to the Knowledge, Skills, and Abilities and Other Characteristics (KSAO) "provided few details and/or examples of where he actually applied those concepts;" and (3) Mr. Krishnan's responses during his interview were not concrete on how to "build coalitions, lead change, or resolve conflicts." McCoy Aff. ¶ 38. Mr. Krishnan does not dispute that Mr. Meusel had some direct experience as an acting manager and does not address Mr. McCoy's statement that Mr. Meusel's written and oral responses were more detailed and comprehensive than Mr. Krishnan's. *See* McCoy Aff. ¶ 45.

Instead, Mr. Krishnan advances three arguments to show pretext: (1) he was a highly-qualified employee with a distinguished career at DOT/FAA; (2) he was more qualified than Mr. Meusel; and (3) Mr. McCoy did not follow agency selection procedures. [6] Mr.

---

[6] Mr. Krishnan argues in passing that Stephen Dash, his former supervisor, had "made disparaging remarks *in the past* about his ethnicity and stated that [Mr. Krishnan] was 'not management material.'" Opp'n at 15 (emphasis added). Specifically, Mr. Krishnan alleges that Mr. Dash called him a "cow chaser." *Id.* at 25. Undoubtedly, this alleged statement would be derogatory and profoundly insensitive. However, Mr. Krishnan did not show that Mr. Dash was involved in Mr. Meusel's selection and did not dispute Mr. McCoy's sworn statement that he "was the only person involved in this selection process." McCoy Aff. ¶¶ 25-26. The fact that Mr. Dash signed off on Mr. McCoy's selection decision, as Mr. McCoy's direct superior, does not suggest otherwise. It is to be noted that, "[d]irect evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decision makers unrelated to the decisional process itself." *Daniel v. Johns Hopkins Univ.*, 118 F. Supp. 3d 312, 315-16 (D.D.C. 2015) (quoting *Kalekiristos v. CTF Hotel Mgm't. Corp.,* 958 F.Supp. 641, 665 (D.D.C.1997)) (stating that a "single remark . . . albeit insensitive, is insubstantial to establish direct evidence of racial or national origin discrimination on the part of the defendant");

Krishnan submits an admirable record of extensive academic preparation and training, as well as one "year of supervisory experience at FV-K level overseeing not only operations but also maintenance of a vital Air Traffic Control Center in New York that was responsible for critical systems that included the operational telecommunications." Opp'n at 3.[7] He argues that he has had "exceptional performance appraisals" throughout his career and that he "has been involved in efforts to foster diversity and improve the work life of his colleagues, particularly those of Pacific-Asian descent." *Id.* Defendant does not dispute any of Mr. Krishnan's statements. Defendant agrees that Mr. Krishnan could have been successful in the supervisory specialist position with additional time, training, and close supervision in the new position. *See* McCoy Aff. ¶ 38. Nonetheless, these allegations merely establish a *prima facie* case, (*i.e.*, that he is a member of a protected class, was qualified for the position, and was rejected in favor of an employee outside the protected class) and do not show pretext in the selection decision.

Second, Mr. Krishnan argues that he was more qualified than the selectee, Mr. Meusel. Mr. Krishnan's assertion contradicts his own Amended Complaint, which states that "he is *equally or* better qualified" than Mr. Meusel "in terms of job performance, education, professional certifications, and pre-DOT work experience . . . ." Am. Compl. ¶¶ 84, 88 (emphasis added). Discrimination will not be inferred from a comparison of candidate qualifications absent a showing that "plaintiff's qualifications were *far superior* to the successful

---

*see also Vatel v. Alliance of Auto. Mfrs.,* 627 F.3d 1245, 1247 (D.C. Cir. 2011) (noting that "[t]he record contains no direct evidence of discrimination — for example, a statement that itself shows racial or gender bias *in the decision* . . . .") (emphasis added).

[7] Mr. Krishnan does not say when he performed this job or the number of employees that he supervised.

10

candidate's." *Singleton v. Potter*, 402 F. Supp. 2d 12, 31 (D.D.C. 2005) (citing *Aka*, 156 F.3d at 1296) (emphasis in original); *see also Edwards v. Principi,* 80 Fed. App'x 950, 952 (5th Cir. 2003) (holding that "a plaintiff [must] show a difference in his qualifications superior to that of the person selected so apparent as to virtually jump off the page and slap us in the face"). Aside from general allegations and legal conclusions, Mr. Krishnan has not marshalled sufficient facts from which a reasonable jury could find that he was "significantly better qualified for the job" than Mr. Meusel, *Aka*, 156 F.3d at 1294. *See* Am. Compl. ¶¶ 24, 84, 88 (alleging that Mr. Krishnan was "equally or better qualified," had "more education," more "relevant experience," and more "general qualifications" than the selectee).

Mr. Krishnan invites the Court to compare his qualifications to those of Mr. Meusel. It is undisputed that both Mr. Krishnan and Mr. Meusel were qualified for the position and that Mr. Meusel scored higher than Mr. Krishnan on Mr. McCoy's written and oral questions. Am. Compl. ¶¶ 30, 47-48. Mr. Krishnan's comparison of his qualifications to those of Mr. Meusel does not show that Mr. Krishnan was far superior, particularly since Mr. McCoy's decision was based on other factors. *See* McCoy Aff. ¶¶ 38, 45 (explaining that selection was based on Mr. Meusel's acting manager experience and his detailed written and oral responses). Morevoer, Mr. Krishnam's assessment of his own qualifications is not persuasive evidence of pretext. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002); *Keeley v. Small*, 391 F. Supp. 2d 30, 50 (D.D.C. 2005).[8]

---

[8] Mr. Krishnan included an affidavit from his colleague, Amritpal S. Nagi. *See* Opp'n, Ex. 2 (Nagi Aff.). Mr. Nagi was the third candidate for the supervisory specialist position at issue. *See* Nagi Aff. ¶ 7. Mr. Nagi asserts *inter alia* that Mr. Krishnan was better qualified than Mr. Meusel, that Mr. McCoy is "a mirror image of his crooked ex-boss" who dislikes Asian Indians, and that "Mr. Krishnan has a very genuine discrimination complaint supported with substantial credible evidence and witnesses (evidence spanning the past 28 years of employment within the

Defendant had a difficult decision to make between candidates who were qualified in different respects. "Fine distinctions" between applicants are not sufficient to infer discrimination and Mr. Krishnan's "pointing to differences in qualifications that merely indicate a 'close call' does not get him beyond summary judgment." *Stewart v. Ashcroft*, 352 F.3d 422, 430 (D.C. Cir. 2003); *see also Carter v. George Wash. Univ.*, 387 F.3d 872 (D.C. Cir. 2004). Mr. Krishnan does not dispute Mr. McCoy's assessment that Mr. Meusel was better qualified in several critical areas. Title VII and ADEA do "not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (internal quotation marks omitted).

Additionally, Mr. Krishnan contends that Mr. McCoy did not follow agency procedures during the interview process and that this shows discrimination. In opposition to Defendant's motion for summary judgment he states, "Krishnan contends that the vacancy announcement required the use of 'Knowledge, Skills, Abilities and Other Characteristics' (KSAO) criteria, which Defendant acknowledged not using in these interviews because Defendant 'devised his own interview tool.'" Opp'n at 4.[9] Mr. McCoy did consider the KSAOs, and the "interview tool" to which Mr. McCoy's refers was Mr. McCoy's scoring system by which he rated each candidate's answers to interview questions. *See* McCoy Aff. ¶¶ 27, 36, 37, 46; *see also id.* ¶ 54 (indicating that Mr. McCoy "established standard scoring criteria" and that the KSAOs were applied "equally for all three candidates"). There is no evidence to the contrary

---

FAA) that should be tried before a proper jury trial." Nagi Aff. ¶¶ 6-7, 9. Mr. Nagi does not rebut any of Defendant's proffered facts and does not show that Mr. Krishnan was significantly better qualified than Mr. Meusel, particularly in those critical areas identified by Mr. McCoy.

[9] Mr. Krishnan uses quotation marks but provides no citation in support.

in the record. Mr. Krishnan does not dispute that Mr. McCoy asked each candidate the same questions in writing and in their interviews and does not explain why the interview process was discriminatory. Even if there were a technical violation of agency procedures and Mr. Krishnan was "victimized by poor selection procedures," Mr. Krishman fails to support his allegations with sufficient facts from which a reasonable jury could conclude that Mr. McCoy discriminated against Mr. Krishnan during the interview and selection process. *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014) (internal quotation marks omitted); *see also Downing v. Tapella*, 729 F. Supp. 2d 88, 98 (D.D.C. 2010).

Accordingly, judgment will be entered in favor of Defendant on Mr. Krishnan's discrimination claims.

### C. Retaliation Claims based on 2011 Non-Selection

Defendant moves to dismiss Mr. Krishnan's retaliation claims under Title VII and ADEA based on the 2011 non-selection, which is in Count III of the Amended Complaint. Mr. Krishnan has not produced any direct evidence of retaliation and, therefore, must assert his claims subject to the *McDonnell Douglas* framework. To establish a *prima facie* case of retaliation, Mr. Krishnan must show that: (1) he engaged in protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link existed between the protected activity and the adverse action. *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *see also Saunders v. Mills*, No. 11-cv-486 (RMC), 2016 WL 1170924, at *5 (D.D.C. Mar. 24, 2016). The third element may be established by showing that an employer knew about the protected activity and that the materially adverse action took place shortly thereafter. *See Michelle v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985).

The Amended Complaint does not clearly identify Mr. Krishnan's prior protected activity, but he argues in opposition that he is relying on discrimination complaints filed in 1997, 2004, and 2008. *See* Opp'n at 22 (indicating that: (1) his 1997 complaint was partially settled in 2007; (2) his 2004 complaint was closed in 2007 and settled in 2009; and (3) his 2008 complaint was closed the same year). "[A]ny inference of causal connection is . . . unwarranted" because Mr. Krishnan's non-selection occurred several years after the most recent of these protected activities. *Singleton*, 402 F. Supp. at 40; *see also Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 82 (D.D.C. 2015), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015) ("Cases in this Circuit consistently have found a lack of causal connection when a year or more has passed between the protected activity and the alleged adverse action . . . .") (citations omitted). The passage of time here is too great to infer causation and the fact that both Mr. Dash and Mr. McCoy "knew that Krishnan [had] engaged in protected activity" years ago, Opp'n at 26, does not establish a causal link between the former protected activity and the alleged current material adverse action. *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998) ("Knowledge is necessary to establish causation, but it is not sufficient."). Accordingly, Mr. Krishnan's retaliation claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss as to some Counts and Summary Judgment as to others. The Court will strike Count IV as redundant under Rule 4(f) of the Federal Rules of Civil Procedure. The following claims will be dismissed: (1) claims under Title VII or ADEA based on the pre-2011 non-selections, because they were not administratively exhausted; (2) retaliation claims under Title VII and ADEA, because the prior protected activity occurred too long ago to infer causation (Count III); (3)

14

Ongoing Pattern of Discrimination claim, because it is a method of proof, as opposed to a separate cause of action, and because the discrete events of non-promotion were not charged on time (Count V); and (4) gender discrimination claim under Title VII based on the 2011 non-selection, because both Mr. Krishnan and Mr. Meusel are men (Count IX). Summary judgment will be entered in favor of Defendant on the following claims based on the 2011 non-selection: (1) race discrimination under Title VII (Count I); (2) age discrimination under ADEA (Count II); (3) religious discrimination under Title VII (Count VI); (4) national origin discrimination under Title VII (Count VII); and (5) ethnic background discrimination under Title VII (Count VIII).

      A memorializing Order accompanies this Memorandum Opinion. This case is closed.

Date: April 11, 2016

                                                            /s/
                                       ROSEMARY M. COLLYER
                                       United States District Judge